FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ FEB 7 2007 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

GARY H. RAMEY, ET AL.,

                       Plaintiffs,

         - against -

DISTRICT 141, INTERNATIONAL
ASSOCIATION OF MACHINISTS AND
AEROSPACE WORKERS, ET AL.,

                       Defendants.

----------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**

CV-99-4341 (BMC)(RML)

**COGAN,** District Judge.

This case is before me on the Report and Recommendation of Magistrate Judge Levy, which proposed a disposition of defendant's motion to strike plaintiffs' damage claims. I assume familiarity with the R&R, portions of which I adopted pursuant to a prior Order. This Memorandum deals with the remaining portions of the R&R, on which I heard argument from the parties on January 19, 2007, and the section references below correspond to those in the R&R. The conclusion of this Memorandum addresses an issue that was not decided in the R&R itself but was raised in the parties' objections and supplemental briefing, namely, whether any remaining damages issues in this case should be tried to the Court or to a jury.

1. **Section A(1)**

I do not agree that the question of the foreseeability of the September 11th attack presents an issue for the factfinder in this case. Although the foreseeability element of proximate cause usually presents a factual question, there are cases in which no

reasonable factfinder could conclude that a particular cause was foreseeable. This is such a case.

It is the general rule of tort law that the criminal act of a third party breaks the chain of causation, constituting what is referred to as a superseding or efficient intervening cause. There are exceptions to this rule in cases where the tortfeasor created the condition that facilitated the criminal act and therefore should have naturally expected the criminal act to occur, or if the criminal act was otherwise foreseeable to the tortfeasor as a result of particular facts. In those cases, the criminal act is not deemed a superseding or efficient intervening cause.

The September 11th attack was obviously a heinous criminal act. The question in this case is whether it was a superseding or efficient intervening cause that broke the chain of causation between defendant's breach of duty and the harms suffered by plaintiffs. Plaintiffs obviously do not argue that the first exception to the general rule applies here (that is, that defendant created the condition that facilitated the criminal act). Instead, Mr. Nelson for the plaintiffs argues that, as a result of prior terrorist attacks, the September 11th attack was the kind of event that would have been reasonably foreseeable to defendant at the time defendant committed its breach. When I inquired of Mr. Nelson at oral argument what sort of proof he would offer to persuade a factfinder of the foreseeability of September 11th, his proffer consisted of what would likely be stipulated or judicially noticed facts – the 1993 World Trade Center attack; the attack on the USS Cole; the bombing of the Kobar barracks; and the Lockerbie air disaster. I do not believe that any of these prior attacks, singularly or cumulatively, raise a factual issue as to the foreseeability of the September 11th attack in the context of this case.

It is important to precisely define the issue. If the issue is whether it was reasonably foreseeable in 1999 that another terrorist attack would occur, then Mr. Nelson's point would be well taken. But that is not the issue, because the overwhelming range of possible terrorist attacks would not have caused or even contributed to the injury that occurred here. Even looking at the pre-September 11th terrorist attacks upon which Mr. Nelson relies, none of them had even the potential of contributing to the plaintiffs' injury here.

Conceived of most broadly, the issue might be whether it was foreseeable that there would be a terrorist attack that would cause layoffs in the airline industry. But even as to that broadly phrased issue, I do not think the history of prior terrorist attacks would allow an affirmative answer. None of the prior terrorist incidents caused such a result, and there would be no basis to reach a conclusion of foreseeability merely by reason of the prior attacks.

To frame the issue more narrowly, one could ask whether it was foreseeable that the improper stripping of seniority rights at issue in this case, coupled with a terrorist attack, might result in the injury suffered by these plaintiffs. This appropriately states the issue, but it is not susceptible to an affirmative response. A finding of foreseeability in this context would require more than a showing of foreseeable disruption to the airline industry; the injury to plaintiffs must have been foreseeable in the context of the particular tortious act, defendant's stripping of plaintiffs' seniority rights. Such a finding would require a determination that it was foreseeable that a future terrorist attack would impact the Eastern seaboard (as it became clear at oral argument that a West Coast attack

would not have had the same consequences on US Airways' operations), and that at least one airport where US Airways had substantial operations would be particularly affected.

The bottom line is that the foreseeability question must take into account industry impact and the particular facts before me in this case. Even if a reasonable person could have foreseen some kind of terrorist attack in 1999, as Mr. Nelson argues, that alone does not make the injury suffered by these plaintiffs reasonably foreseeable. (I should note that this assumes as an initial matter that the September 11th attack was at least one of the causes of plaintiffs' injury, which remains in dispute.) The trouble for plaintiffs in this case is that the September 11th attack was *sui generis*, so shocking in its methods and so specific in its impact on these plaintiffs because of their occupation in the airline industry in particular locations, that no one could have reasonably foreseen that impact. It would not be possible to reconcile the complete surprise of the attack and its consequences at every level of public and private life with a finding that plaintiffs' injuries from the attack, nevertheless, were foreseeable.

In this regard, I cannot accept Judge Levy's formulation of the issue as whether defendant was "entirely unable to foresee some type of airline disruption that would harm the plaintiffs" as a result of the tort committed against them. That phrasing – "some type of airline disruption" – begs the question. As I will discuss below, there are numerous types of airline disruptions which would indeed be foreseeable, and thus, proximate causes of plaintiffs' injury, but the issue is whether this particular disruption, an unprecedented criminal act, is so far attenuated from the tort that the law does not require even a tortfeasor like defendant to answer for it. I believe that it is.

As a result, I dismiss the claims by some plaintiffs for damages caused by displacement for three weeks following the September 11th attack. That temporary layoff was due solely to the attack. Since it was not foreseeable, plaintiffs may not recover damages for those losses.

The Chapter 11 filing of US Airways stands on very different footing. Before exploring this, I should say that while the parties have referred to this event as the US Airways bankruptcy or Chapter 11 filing, the filing of a petition in bankruptcy itself is not the significant event. Rather, it is the financial decline of US Airways that began soon after defendant's wrongful act and culminated in the Chapter 11 filing that is significant. This is because, even if US Airways had managed to avoid bankruptcy, it still might have been compelled to make the layoffs at issue due to financial misfortune, and plaintiffs would have suffered the same or similar injury. A bankruptcy filing is simply confirmation that the debtor has suffered severe financial decline, but it is the financial decline, not the bankruptcy filing itself, with which we are concerned. Nevertheless, it is convenient to refer to the "bankruptcy filing" as the event being considered here and I will continue to do so, subject to this understanding.

It is common ground in this case that at least some portion of US Airways' financial problems existed without the additional impact of the September 11th attack, and it is therefore necessary to analyze the foreseeability of US Airways' financial decline as a separate part of the proximate cause question. US Airways' financial position was a business reversal that began in about the summer of 2000 and culminated, for our purposes, in plaintiffs' positions being put in jeopardy approximately four years later.

It seems to me that bankruptcy, which again is merely one facet of financial decline, may be a reasonably foreseeable event that would result in injury from the improper stripping of seniority rights. A seniority list is designed precisely to protect workers at a certain level from adverse business changes, whether those changes are mergers and acquisitions, decreased demand for the company's product, higher costs, bankruptcy, or a myriad of other economic events that cause the company to need fewer workers. These events occur with regularity in the business world and often result in layoffs. It therefore follows that layoffs resulting from them may be reasonably foreseeable.

Defendant's counsel, Mr. Bartos, attempted to distance his client's wrongful act from the injury here by focusing on the amount of time that passed between his client's breach of duty and US Airways' bankruptcy filing. I understand his point to be that at the time of defendant's breach, US Airways was in splendid financial condition, a fact which I think is not disputed. Therefore, Mr. Bartos argues, it was not reasonably foreseeable that US Airways would file bankruptcy nearly four years later. He urged that while a jury has already determined that his client sought to injure plaintiffs, his client contemplated doing so through short term deprivations, such as the loss of choice overtime assignments or less desirable workplace conditions, but not through actual job loss because of their reduced seniority.

I am compelled to reject this argument, at least to the extent that it would strike plaintiffs' damages claims as a matter of law. It would reward defendant for its shortsightedness, because it reasonably could have and an objective person might well have anticipated the possibility of a business decline sufficient to result in layoffs that

would affect these plaintiffs. The vagaries of the business cycle are part of any labor negotiation and the consequences of a downturn, whether in the short or long term, must be considered by union representatives in negotiating seniority rights. Until a worker retires or reaches a vested seniority level, he is always exposed to adverse business events, and distribution of the impact of such events among workers in future years is the very purpose of seniority provisions.

In addition, it would be an unworkable rule to tie proximate cause, as a matter of law, to the length of time over which a financial decline occurs. Doing so would allow a finding of proximate cause in cases of precipitous financial decline, but provide no parameters on how "precipitous" should be defined. For example, it cannot be determined as a matter of law whether the US Airways' bankruptcy four years after defendant's breach was too attenuated, where a bankruptcy two years earlier might not have been. In this case, I think it best to leave the determination to the factfinder of whether there is a sufficient connection between the plaintiffs' loss of seniority and the foreseeability of US Airways' financial decline as a result of normal business decisions and events. This approach seems especially appropriate in this case given that US Airways' financial decline began within a matter of months after the stripping of seniority rights, although it did not hit bottom for some years after that.

To say that the September 11th attack was not foreseeable and that the bankruptcy filing might have been, however, still does not resolve the question here, because we do not know to what extent, if at all, the September 11th attack caused plaintiffs' injury (other than the three weeks during which Reagan National Airport was shut down). The matter is complicated because both the record and the publicly available filings by US

Airways demonstrate that the bankruptcy filing was caused, at least in US Airways' view, not simply by the normal business declines that result from mergers and market changes, although those were certainly factors, but from the September 11th attack itself. I therefore must proceed to determine how a factfinder is to sort this out.

Because it is always a plaintiff's burden to establish foreseeability, I believe that the ultimate burden of proof to show that plaintiffs' injuries here were caused by foreseeable events will remain with plaintiffs. Plaintiffs will have satisfied their initial burden of making a *prima facie* case as to foreseeability by showing that they were improperly stripped of their seniority rights (a fact on which the factfinder will be instructed, based on the prior jury verdict), and that the loss of seniority rights led to an injury upon or in connection with US Airways' bankruptcy filing. These facts are adequate to show causation in fact, and would support an inference by the factfinder, if it so determines, that normal business events caused plaintiffs' loss.

At that point, the burden will shift to defendant to produce admissible evidence showing that a superseding event, the September 11th attack, caused the injury to plaintiffs here rather than the normal business events that led to US Airways' financial decline. In this regard, it will not be sufficient for defendant to simply point out that September 11th occurred. It will need to adduce at least some proof that would support the conclusion that September 11th, not the bankruptcy, was the cause of plaintiffs' injury. If defendant meets that burden of production, then the ultimate burden of proof as to foreseeability will remain with plaintiffs to prove that their injuries were caused by normal business events, not the September 11th attack.

I recognize that separating out the impact of what I have determined to be an unforeseeable event, the September 11th attack, from what I have determined to be at least an arguably foreseeable event, US Airways' financial decline, is not easily susceptible to proof. This may be because plaintiffs' losses in fact would have occurred without September 11th (again, other than the three week closure of Reagan National Airport). It may also be because this egg cannot be unscrambled, so to speak, without relying on speculative evidence that the law does not allow.

I will not interfere with the parties' prerogative as to how to present their cases to the factfinder, but it does seem possible to develop a reliable economic model that addresses the relative impact of these forces on US Airways' financial condition, and permits a conclusion as to the effect of US Airways' financial decline on these plaintiffs with the hypothetical absence of the September 11th attack. If this is incorrect and any such evidence proves too speculative to consider, then it still strikes me as appropriate to leave the burden with defendant of going forward on the issue of whether intervening causes broke the causal chain that began with its breach of duty, because a jury has already found that it committed a tortious act. If defendant cannot produce admissible evidence to demonstrate that September 11th and not the course of financial decline at US Airways caused plaintiffs' loss, then plaintiffs will not have to rebut it to meet their burden of proof.

## 2. Section A(II)

I agree with Judge Levy on this point that plaintiffs' claim for damages as a result of voluntary furloughs or early retirement must be submitted to the factfinder. However, I cannot agree that the standard for constructive discharge is the proper analytical framework to determine the issue. Defendant has already been found liable to plaintiffs in this case for its breach of duty. In a constructive discharge case, plaintiff bears the burden of proving that the defendant is liable by showing intolerable working conditions that essentially forced plaintiff to quit. Although there may be a tempting similarity, constructive discharge is not squarely analogous here. It imposes too heavy a burden on plaintiffs to require them to prove liability for constructive discharge when a jury has already found defendant liable for its breach of duty, and all that remains is a question of damages. Put somewhat differently, to impose the constructive discharge framework would require plaintiffs to prove a claim that they have not pled and give them no credit for the one which they have pled and proved successfully.

A more apt analogy would be a case in which the plaintiff had proved a case of constructive or actual discharge, and the defendant asserted that the plaintiff had taken a lower paying replacement position than was available, and thus should be prevented from recovering the salary differential between the terminated and replacement jobs. The plaintiff might then reply that the higher paying job had onerous conditions which plaintiff should not be required to suffer. This analogy clearly presents a simple exercise in mitigation of damages. The standard in a mitigation case is whether the plaintiff acted reasonably to mitigate his damages after he was wronged. I believe this is the proper analysis to govern the issue here.

10

Viewing defendant's response to plaintiffs' claim for damages as a mitigation issue not only avoids burdening plaintiffs with a claim that they have not brought and depriving them of the advantage in the claim on which they have prevailed, but also properly allocates the burden of proof on this issue. Stated otherwise, plaintiffs should not have to show that they were constructively discharged. Instead, defendant should have to show that plaintiffs acted unreasonably in accepting voluntary furlough and retirement such that they should not be permitted to recover the differential between their furloughed or retired status and their previous employment.

Mr. Nelson makes the point that defendant has not pled an affirmative defense of failure to mitigate. First, I am not sure he appreciates the negative implications from his clients' perspective of using the constructive discharge model, on which his clients would have the burden of proof, as opposed to allowing the defense by way of mitigation. Or perhaps his argument is that defendant should be precluded entirely from seeking to impose any consequences on plaintiffs for their choice to stop working. In either event, justice is not offended by allowing a mitigation defense. As the R&R makes clear, plaintiffs' theory of damages has evolved continuously since defendant filed an answer in this case, and it is not clear that mitigation would have applied prior to the naissance of plaintiffs' current theory. The availability of amendments of this nature virtually always turns on prejudice and surprise, and since I will allow adequate time for the preparation of evidence for the damages trial and plaintiffs have become fully aware of the mitigation defense, defendant's answer is hereby deemed amended to assert an affirmative defense of failure to mitigate.

In sum, plaintiffs will be entitled to recover the difference between the payments and benefits they received on voluntary furlough or retired status, and the salaries they would have received had they continued working, unless defendant can show that plaintiffs acted unreasonably in opting to stop work. In attempting to make that showing, defendant will no doubt introduce evidence of facts similar to those that would be used to demonstrate lack of a constructive discharge, such as that relocations and shift changes are a normal part of any airline industry job. Nonetheless, the burden of proof that plaintiffs acted unreasonably in opting voluntary furlough or early retirement shall remain with defendant.

### 3. **Court Or Jury as Factfinder**

Finally, I am of the view that the damages request here is incidental to the request for injunctive relief sought in this case, and thus the action sounds in equity. To determine whether a particular action will resolve legal rights, and therefore gives rise to a jury trial right, a court must examine both the nature of the issues involved and the remedy sought. Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558 (1990) ("First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.") (citing Tull v. United States, 481 U.S. 412, 417-418 (1987)). The second inquiry is the more important in the court's analysis. Terry, 494 U.S. at 565 (citing Granfinanciera, S. A. v. Nordberg, 492 U.S. 33, 42 (1989)).

In Terry, the Supreme Court considered whether a jury trial was required in a hybrid claim for an employer's breach of a collective bargaining agreement and the

union's breach of the duty of fair representation. It found that a union member's suit for breach of the duty of fair representation was closely analogous to a beneficiary's suit against his trustee over the handling of trust assets, the latter of which was always confined to the equity courts. On the question of the nature of the relief sought, the Court found the claim to be an action at law, noting, significantly, that there was no longer a request for injunctive relief (it was dismissed along with claims against the employer following the employer's bankruptcy filing). The compensatory damages sought therefore could not be considered incidental or intertwined with injunctive relief. See Tull, 418 U.S. at 424. In addition, recovery in Terry depended in part on proving a breach of contract claim, an action at law, against the employer, even though the employer was absent due to bankruptcy, as it is in this case.

Neither of the circumstances present in Terry applies here. Central to this case is a request for extensive injunctive relief, which has in fact been granted, and the breach of fiduciary duty claim against the union here does not depend upon proving a breach of contract claim against the employer. True, plaintiffs asserted a claim against US Airways alleging that they had a duty to "preserve and maintain plaintiffs' various benefits and working conditions," including their seniority, but the allegation of a breach by US Airways is purely derivative of plaintiffs' claim that the union breached its duty of fair representation in negotiating the seniority provisions. It is not like the typical "hybrid" claim as in Terry, for plaintiffs do not and never did have to prove a breach of contract carrying a legal remedy or any other action at law against US Airways as a predicate for recovering against defendant here.

It may be tempting to view the damages element as primary in this case because of the way the case has evolved. Plaintiffs largely declined the result of the Court's grant of injunctive relief when defendant was able to achieve it, and we have since been occupied with determining whether and under what theories plaintiffs may recover damages. However, it is clear both from the language of the complaint and the parties' conduct prior to the issuance of the injunction that injunctive relief was plaintiffs' primary goal in this action. It was commenced in 1999, and the layoffs and furloughs that plaintiffs claim support the award of damages presently at issue were simply not at issue then. All that mattered, or at least what mattered most to plaintiffs, was restoration of their seniority status. Mr. Nelson's argument, essentially that the changing factual landscape required plaintiffs to modify the focus of the relief sought, particularly because the majority of plaintiffs are no longer employed by US Airways and therefore did not benefit from the injunctive relief awarded, cannot convert this action as it was originally brought from one seeking equitable relief, with incidental damages, to an action at law requiring a jury trial on the remaining issues.

I should note that although this case was bifurcated for trial and a jury addressed the question of liability, the issue of whether the claims in the case required a jury trial was not addressed prior to the post-trial submissions on damages. The parties simply assumed without discussion that the initial phase of the bifurcated case would be tried to a jury. The Court's determination of the sequence of proceedings therefore does not raise a question of estoppel as in <u>Beacon Theaters, Inc. v. Westover</u>, 359 U.S. 500 (1959), and its progeny, and neither of the parties have advanced such an argument. Moreover, as a matter of procedure, the Federal Rules do not impose a time limit on a party's ability to

move to strike a jury demand, and I have therefore construed defendant's submissions as a motion to strike plaintiffs' jury demand as it applies to the remaining issues in the case.

Ultimately, the damages sought here merely make the injunction fully effective. The injunction remedied the deprivation caused by defendant's breach from the moment it issued and continuing into the future. Damages are required only because the injunction could not compensate for injuries that incurred before its issuance which are now required to make the remedy complete. Under these circumstances, the damages sought should be considered incidental to the injunctive relief, and the matter should be tried to the Court.

## CONCLUSION

The R&R is adopted in part and denied in part, and the motion to strike plaintiffs' damages is granted in part and denied in part, as set forth above. The parties shall appear for a status conference on February 21, 2007, at 10:30 a.m., to set a schedule for a bench trial.

**SO ORDERED.**

Dated: Brooklyn, New York
February 7, 2007

/s/(BMC)

U.S.D.J.